JACOB YOUNG SOO PARK and ROSE YONE PARK, Plaintiffs-Appellees, *v.* ROMEO A. ESPERANZA, ESPERANZA REAL ESTATE INVESTMENT CO., INC., a Hawaii corporation, MORITO TSUGAWA, NATIONAL MORTGAGE AND FINANCE CO., LIMITED, a Hawaii corporation, and INTERNATIONAL SAVINGS AND LOAN ASSOCIATION, LIMITED, a Hawaii corporation, Defendants, and HARRY YOUNG and WAIKIKI REALTY, LIMITED, a Hawaii corporation, Defendants-Appellants, and PIONEER FEDERAL SAVINGS AND LOAN ASSOCIATION OF HAWAII, a United States of America chartered corporation, Charter No. K-2627, Defendant-Appellee

NO. 8373

(CIVIL NO. 47689)

MARCH 22, 1983

BURNS, C.J., HEEN AND TANAKA, JJ.

OPINION OF THE COURT BY BURNS, C.J.

Defendants-appellants Harry Young (Young) and Waikiki Realty, Limited (Waikiki Realty) appeal the summary judgment in favor of defendant-appellee Pioneer Federal Savings and Loan Association of Hawaii (Pioneer) against plaintiffs-appellees Jacob Young Soo Park and Rose Yone Park (Parks) and the judgment in favor of the Parks against Young and Waikiki Realty.

We affirm the summary judgment in favor of Pioneer against the Parks. We reverse the judgment in favor of the Parks against Young and Waikiki Realty and remand that aspect of the case for a new trial.

Two issues are dispositive. 1) Do Young and Waikiki Realty have standing to appeal the summary judgment in favor of Pioneer against the Parks? Our answer is no. 2) Were the issues of the Parks' contributory negligence and of the applicability of the statute of limitations (which were tried but not decided as to other parties in the case) tried as to Young and Waikiki Realty with the implied consent of the Parks? Our answer is yes.

PRE-COMPLAINT FACTS

The Parks owned property at 1924 and 1926 Kaioo Drive (the property) in Waikiki. In 1971, they gave real estate salesman Young an exclusive listing to sell it. Young was employed by Waikiki Realty.

According to Mrs. Park, Young telephoned one day and advised her that Romeo Esperanza (Esperanza) offered to purchase the property for $145,000. Mrs. Park asked Young "what kind of person" Esperanza was, and Young responded, "Yeah, he has a lot of investments in Honolulu. He's okay."

On May 3, 1972, Young took the Parks to Esperanza's office where the Parks signed a Hawaii Association of Real Estate Board's 1971 form Deposit Receipt, Offer and Acceptance (DROA) which Esperanza had completed before the Parks arrived.

The DROA designated Esperanza Real Estate Investment Co., Inc. (Esperanza, Inc.) as the buyer and provided for the

payment of the purchase price as follows: "$29,000.00 in cash . . . and balance of $116,000 subject to financing by any lending institution, terms acceptable by buyers [sic]." Closing was to occur "on or before June 30, 1972." Fifty per cent of the 6% fee was to be paid to Waikiki Realty and 50% to "Romeo A. Esperanza, Realtor." The designated escrow was "National Escrow."

After the DROA was signed, Esperanza asked the Parks "if we would like to go into an Agreement of Sale because if we did, then, we'd save money in taxes." Thereupon, the parties orally agreed to a five-year agreement of sale. The terms were as follows: $29,000 in cash and $116,000 payable at $927 per month including per annum interest at 8-1/2%.

On May 26, 1972, Esperanza telephoned the Parks and asked them to come to his office. When the Parks got there, Esperanza and Young were together in Esperanza's office. The Parks sat down at Esperanza's desk where there was a stack of papers. Mrs. Park asked Young, "Is it okay, is everything okay?" Young responded, "Yeah, it's okay." Then, Esperanza came around his desk and told the Parks where to sign and they signed. Both Parks testified that they thought they were signing an agreement of sale and that they did not read what they signed. In fact, they signed a standard warranty deed of the property to Esperanza, Inc.[1] At Esperanza's request, Morito Tsugawa (Tsugawa) later notarized the Parks' signatures even though Tsugawa did not witness the signing.

While they were signing, Mrs. Park noticed that Young was in the outer reception room. After the Parks completed signing, Young returned to Esperanza's office. Esperanza then suggested that he serve as the escrow. Mrs. Park looked to Young for a response, and he said, "It's okay." Thereupon, Esperanza and the Parks signed a letter addressed to National Escrow cancelling its appointment as escrow for the transaction.

---

[1] The first two words in the body of the first page of the three-page, double-spaced document were "THIS DEED."

Later, at Waikiki Realty's request, Mrs. Park (but not Mr. Park) signed a letter addressed to Waikiki Realty which stated:

RE: PROPERTY SITUATE AT 1924-1926 KAIOO DR. HONOLULU, HI. TAX MAP KEY 2-6-12-54
SELLER: PARK
PURCHASER: ESPERANZA R.E. INV. CO. INC.

NOT WITHSTANDING THE FACT THAT THE ABOVE TRANSACTION WAS SUPPOSED TO HAVE BEEN CLOSED IN ESCROW BY NATIONAL ESCROW & TITLE CORPORATION, WE THE UNDERSIGNED AGREE THAT ROMEO A. ESPERANZA, REALTOR, SHALL DO THE ESCROW.

WE HEREBY RELIEVE WAIKIKI REALTY, LIMITED OF ANY LIABILITY THAT MAY ARISE BECAUSE OF THE ABOVE DECISION.

EXECUTED AT HONOLULU, HAWAII THIS 26 DAY OF MAY, 1972

/s/ Rose Y. Park
ROSE Y. PARK

On May 30, 1972, Esperanza called Mrs. Park, told her that his down payment check was ready, and asked her to bring to his office what turned out to be the Land Court Transfer Certificate of Title (TCT)[2] covering the property. At Esperanza's office, Mrs. Park gave Esperanza the TCT. In return, Esperanza gave her an envelope and a letter-gram which stated:

Enclosed are the following:
1. Check of $18,943.67 net proceeds as indicated in the closing statements
2. Check of $553.57 for adjustment on the property tax, rental deposits and rental prorata.
3. Original Copy of the Note for $116,000.00
4. Copy of the Mortgage for $116,000.00
5. Copy of the Closing Statements
6. Copy of the rental deposits & rental prorata as was given by you.

---

[2] Section 501-82, HRS (1976), provides in part:

§ 501-82 Tenure of holder of certificate of title. Every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold the same free from all encumbrances except those noted on the certificate in the order of priority of recordation, and any of the following encumbrances which may be subsisting[.]

Mrs. Park looked at, but did not read, the letter-gram and then signed and dated it. According to her, the two checks were outside the envelope, and she thought the envelope contained the agreement of sale. Mrs. Park took the envelope without examining its contents and put it into her safety deposit box.

Esperanza regularly paid the Parks $927 per month through January 1976.

After Esperanza stopped making payments and after receiving notice from the federal court about a Chapter 11 bankruptcy proceeding involving Esperanza, Inc., Mrs. Park investigated and learned that Esperanza, Inc., owned the property, that on May 30, 1972 it was mortgaged to Pioneer to secure a $112,000 loan, and that what Esperanza had given her in the envelope was Esperanza, Inc.'s promissory note for $116,000 payable at $927 per month including interest at 8-1/2% per annum and an unrecorded mortgage of the property as security therefor.

### POST-COMPLAINT FACTS

On March 5, 1976, the Parks sued Esperanza, Esperanza, Inc., Young, Waikiki Realty, Tsugawa, National Mortgage and Finance Co., Limited (National Mortgage), International Savings and Loan Association, Limited (International Savings), and Pioneer, seeking damages for negligence and fraud.

As an affirmative defense, Young and Waikiki Realty pled the release. National Mortgage, International Savings, and Tsugawa pled the affirmative defenses of statute of limitations, statute of frauds, laches, and contributory negligence.[3]

---

[3] § 663-31 Contributory negligence no bar; comparative negligence; findings of fact and special verdicts. (a) Contributory negligence shall not bar recovery in any action by any person or his legal representative to recover damages for negligence resulting in death or in injury to person or property, if such negligence was not greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, but any damages allowed shall be diminished in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made.

(b) In any action to which subsection (a) of this section applies the court, in a nonjury trial, shall make findings of fact or, in a jury trial, the jury shall return a special

On August 27, 1976, Pioneer moved for summary judgment against the Parks. On September 22, 1976, the trial court granted Pioneer's motion.[4]

On October 25, 1976, Young and Waikiki Realty cross-claimed against Esperanza and Esperanza, Inc., alleging concealment, nondisclosure, and misrepresentation, and praying for indemnity.

At a pretrial conference on January 3, 1977, Young and Waikiki Realty orally moved under Rule 15(a), Hawaii Rules of Civil Procedure (HRCP), to amend their answer to include the affirmative defenses of contributory negligence, assumption of risk, and statute of limitations. This oral motion was denied.[5]

The eight-day trial commenced on January 4, 1977. On that day, Esperanza, Inc., was defaulted for failure to plead or defend.

On the fifth day of trial, at the conclusion of the Parks' evidence, Esperanza orally moved under Rule 15(b), HRCP, to amend his answer to add the affirmative defenses of statute of limitations and contributory negligence. This motion was denied.

---

verdict which shall state:

    (1) The amount of the damages which would have been recoverable if there had been no contributory negligence; and

    (2) The degree of negligence of each party, expressed as a percentage.

    (c) Upon the making of the findings of fact or the return of a special verdict, as is contemplated by subsection (b) above, the court shall reduce the amount of the award in proportion to the amount of negligence attributable to the person for whose injury, damage or death recovery is made; provided that if the said proportion is greater than the negligence of the person or in the case of more than one person, the aggregate negligence of such persons against whom recovery is sought, the court will enter a judgment for the defendant.

    (d) The court shall instruct the jury regarding the law of comparative negligence where appropriate.

[4] The trial court thereby created an "empty chair." *See* Miller, *Filling the "Empty Chair": Some Thoughts About Sugue,* 15 Hawaii Bar Journal 69 (Summer, 1980).

[5] In their points on appeal, Young and Waikiki Realty do not cite the denial of this oral motion as error.

At the conclusion of the Parks' evidence, the trial judge directed verdicts in favor of Young and Waikiki Realty as to the fraud allegation and National Mortgage and International Savings as to all allegations.[6] Only the Parks objected to these directed verdicts.

At the conclusion of all evidence, Young and Waikiki Realty orally moved under Rule 15(b), HRCP, to amend their answer to add the affirmative defense of contributory negligence. The trial judge denied the motion and stated, "It comes too late."

After instructions were settled but before they were read to the jury, the trial judge announced to the jury "that Tsugawa is no longer in this case, nor his attorney."[7] At about the same time, Young and Waikiki Realty filed a written motion under Rule 15(b), HRCP, to amend their answer to add the affirmative defenses of "contributory negligence, assumption of risk and statute of limitations." The trial judge promptly denied this motion.

On January 13, 1977, by special verdict form, the jury found that Young and Waikiki Realty were negligent as to the Parks, that their negligence was not reckless or wanton, that their negligence was a proximate cause of the Parks' damages, that Esperanza was also negligent as to the Parks and that his negligence was also a proximate cause of the Parks' damages, that the Parks' actual damages were $121,000, that as against Young and Waikiki Realty the Parks suffered no damages for emotional distress, and that Young and Waikiki Realty had a valid cross-claim against Esperanza.

Thereafter, judgment was entered in favor of the Parks against Young, Waikiki Realty, and Esperanza in the sum of $121,000 and in favor of Young and Waikiki Realty against Esperanza in the same amount.

---

[6] For a discussion about the dismissal of co-defendants from a case, see *Bray* v. *Gross*, 16 N.J. 382, 108 A.2d 850, 853 (1954); Annot. 82 A.L.R. 3d 974 (1978).

[7] Presumably, Tsugawa settled with the Parks by paying them a consideration. If so, *Ginoza* v. *Takai Elec. Co.*, 40 Haw. 691 (1955), and 47 Am. Jur. 2d *Judgments* § 993 (1969) are relevant.

On February 14, 1977, Young and Waikiki Realty moved for a new trial on the grounds, *inter alia,* that they were not permitted to amend their answer to include the affirmative defense of contributory negligence. In his order denying the motion, the trial judge stated:

It is quite clear that this defense was not one that was anticipated by plaintiffs with respect to their dealing with their own agents. It is a most unusual defense for a realtor to raise against his client and one which plaintiffs were not prepared to defend against under the situation. It was tried neither with the express or implied consent of the plaintiffs.

### THE APPEAL

Young and Waikiki Realty (appellants) appeal and assert various points, two of which are dispositive.

### I.

Appellants, not the Parks, contend that the trial court erred in awarding summary judgment in favor of Pioneer against the Parks. Pioneer responds that not only was summary judgment proper, but also that appellants have no standing to appeal this issue because it does not affect their "substantial rights." *Dress Mfg. Co. v. Cadinha,* 33 Haw. 456 at 481 (1935). Appellants contend that the summary judgment deprived them of an opportunity to seek contribution from Pioneer under Hawaii Revised Statutes (HRS) section 663-17(b). We agree with Pioneer that appellants have no standing to appeal this issue.

Section 663-17(b) (1976), HRS, provides:

§ 663-17 Third-party practice; enforcement of right to contribution. * * *

(b) A pleader may either (1) state as a cross-claim against a co-party any claim that the co-party is or may be liable to the cross-claimant for all or part of a claim asserted in the action against the cross-claimant; or (2) move for judgment for contribution against any other joint judgment debtor, where in a single action a judgment has been entered against joint tortfeasors one of whom has discharged the judgment by payment or has paid more than

his prorata share thereof. If relief can be obtained as provided in this paragraph no independent action shall be maintained to enforce the claim for contribution.

\* \* \*

The only claim against Pioneer was made by the Parks. When Pioneer defended against the Parks' complaint by moving for summary judgment, appellants opposed the motion, but only on the grounds that there was a genuine issue of material fact as to whether Pioneer was negligent in making a loan to Esperanza, Inc., and paying the proceeds directly to Esperanza.[8] They did not indicate a desire or intent to cross-claim against or to seek contribution from Pioneer.[9] Appellants may not present a contention on appeal which they did not raise in the trial court. *Oceanic Foundation v. Kondo,* 53 Haw. 1, 486 P.2d 396 (1971). In the absence of a stated claim or intent to claim against Pioneer, appellants have no standing to complain of the summary judgment awarded in Pioneer's favor against the Parks.

## II.

Appellants contend that the trial court abused its discretion when it refused to allow them to amend their answer at the close of trial as authorized by Rule 15(b), HRCP. We agree.

Rule 8(c), HRCP, states, *inter alia:*

(c) Affirmative Defenses. In pleading to a preceding pleading, a party shall set forth affirmatively accord and satisfaction, arbitration and award, assumption of risk, contributory negligence, discharge in bankruptcy, duress, estoppel, failure of consideration, fraud, illegality, injury by fellow servant, laches, license, payment, release, res

---

[8] The fact that they opposed the motion does not give them standing to appeal it. Query whether they had standing to oppose the motion on the asserted grounds.

[9] If they had, then *Bray v. Gross, supra,* n. 6, would be relevant.

judicata, statute of frauds, statute of limitations, waiver, and any other matter constituting an avoidance or affirmative defense. * * *

Rule 15(b), HRCP, states:

(b) Amendments to Conform to the Evidence. When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. Such amendment of the pleadings as may be necessary to cause them to conform to the evidence and to raise these issues may be made upon motion of any party at any time, even after judgment; but failure so to amend does not affect the result of the trial of these issues. If evidence is objected to at the trial on the ground that it is not within the issues made by pleadings, the court may allow the pleadings to be amended and shall do so freely when the presentation of the merits of the action will be subserved thereby and the objecting party fails to satisfy the court that the admission of such evidence would prejudice him in maintaining his action or defense upon the merits. The court may grant a continuance to enable the objecting party to meet such evidence.

In this situation, Rule 15(b) overrides Rule 8(c). Consequently, if the affirmative defenses which appellants wanted to assert were tried by express or implied consent of the parties, the amendment should have been allowed. *Wilson v. Kealakekua Ranch, Ltd.,* 57 Haw. 124, 551 P.2d 515 (1976); *Godoy v. Hawaii County,* 44 Haw. 312, 354 P.2d 78 (1960); 6 Wright and Miller, Federal Practice and Procedure: §§ 1492, 1493 (1971). Upon review of the record, we disagree with the trial judge and conclude that the statute of limitations and the contributory negligence issues were tried as to the appellants with the implied consent of the Parks and the appellants.

National Mortgage, International Savings, and Tsugawa pled the affirmative defenses of contributory negligence and statute of limitations. They did not, however, assert assumption of risk. National Mortgage and International Savings were not excused from the case until the conclusion of the Parks' case-in-chief. Tsugawa was not excused until after all evidence had been presented. As might be expected, the record

is replete with evidence of the Parks' contributory negligence and of the applicability of the statute of limitations. A significant part of this evidence was introduced by Esperanza and by Young and Waikiki Realty. This evidence was admitted without any objection by the Parks as to its lack of relevance to the Parks' dispute with the appellants and without any other indication by the Parks that they were consenting to its introduction in favor of National Mortgage, International Savings, and Tsugawa but not in favor of appellants and Esperanza. It is in the record without any limitation as to purpose. By failing to object to its lack of relevance to the Parks' dispute with the appellants or to ask for a limitation as to its use, the Parks impliedly consented to its admission for all purposes, including appellants' purposes. *Hamm v. Merrick,* 61 Haw. 470, 605 P.2d 499 (1980); *Okuhara v. Broida,* 51 Haw. 253, 456 P.2d 228 (1969). Under such circumstances, the lower court abused its discretion when it refused to allow appellants to amend their pleadings to include those two affirmative defenses.[10]

The judgment in favor of Pioneer against the Parks is affirmed. The judgment in favor of the Parks against Young and Waikiki Realty is reversed and remanded for a new trial.

*Kazuhisa Abe* (*Abe & Abe* of counsel) for defendants-appellants.

*Edward Y. N. Kim* (*Bruce B. Kim* with him on the briefs) for plaintiffs-appellees.

*Richard C. Sutton, Jr.* (*Dawn Suyenaga Candon* with him on the briefs) for defendant-appellee Pioneer Savings and Loan Association of Hawaii.

---

[10] An issue not pleaded but tried with the implied consent of the parties it involves should be submitted to the jury for decision even if the pleadings have not been amended. *Associated Engrs. & Constrs.* v. *State,* 58 Haw. 187 at 216-217, 567 P.2d 397 at 416 (1977). Consequently, appellants also could have appealed the trial judge's failure to submit the two issues in question to the jury for decision.